IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NILDA G., | ) |
|       Plaintiff, | ) ) ) |
| v. | )   No. 22 C 1542 ) |
| MARTIN J. O'MALLEY,<br>Commissioner of Social Security,[1] | )   Magistrate Judge Finnegan ) ) |
|       Defendant. | ) ) |

## ORDER

Plaintiff Nilda G. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for SSI on February 7, 2019, alleging disability since May 15, 2015 due to abdominal side pains, blood not flowing, possible surgery for fibroids, high blood pressure, high cholesterol, a thyroid problem, anxiety, and depression. (R. 173, 197). Born in April 1972, Plaintiff was 46 years old as of the application date (R.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

173), making her a younger person. 20 C.F.R. § 416.963(c). She completed eighth grade in special education classes and lives with her son, though she has experienced homelessness. (R. 16, 24, 37, 198). Plaintiff has worked as a home care assistant, a housekeeper, and a laundry worker (R. 199, 211), but it is not clear that she earned enough for the jobs to qualify as substantial gainful activity. (R. 92-93).

The Social Security Administration denied Plaintiff's application initially on May 30, 2019, and again upon reconsideration on December 18, 2019. (R. 56-86). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Luke Woltering (the "ALJ") on June 2, 2021.[2] (R. 10). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Ronald Malik (the "VE"). (R. 12-55). On November 8, 2021, the ALJ found that Plaintiff's bipolar disorder, generalized anxiety disorder, osteoarthritis of the hands, flexion contracture in the right hand, and degenerative disc disease of the cervical spine are severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 93-95).

After reviewing the evidence in detail, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work. (R. 95-102). The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could not perform any of Plaintiff's past jobs, but could perform a significant number of other jobs available in the national economy, including fastener, bander, and splitter. (R. 102-03). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the application date through the date of the decision. (R. 103-04). The Appeals

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

Council denied Plaintiff's request for review on January 26, 2022. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

Plaintiff does not challenge most aspects of the ALJ's decision, including the identification of severe and non-severe impairments, the RFC determination, or the weighing of the opinion evidence. All of these arguments have been waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020) (arguments not raised before the district court are waived). In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding her not disabled at step five of the sequential analysis; and (2) improperly discounted her subjective statements regarding her bipolar symptoms. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.     Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or a combination of impairments; (3) the claimant's impairment meets or equals any

3

impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021); *see also Melvin J. v. Kijakazi*, No. 20 C 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

4

**B.     Analysis**

    **1.     Step Five Determination**

Plaintiff argues that the case must be reversed or remanded because the ALJ's step five determination is fatally flawed. At step five, "the agency bears the burden of demonstrating that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)). ALJs often rely on vocational experts to list jobs available to a claimant, but the ALJ must "determine what constitutes a 'significant' number of jobs on a case-by-case basis." *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022).

Here, the ALJ asked the VE to consider a hypothetical person with Plaintiff's background (age, education, work experience) who had an RFC for light work with the following non-exertional limitations: remembering and carrying out only simple work instructions; sustaining concentration to perform simple, routine, repetitive tasks; making only simple work-related decisions; adapting to routine changes and stressors in a work setting; interacting only occasionally with supervisors; interacting with coworkers occasionally and superficially with no tandem tasks or teamwork; and having no more than incidental contact with the public. (R. 45). The VE testified that such a person could perform 17,000 representative jobs available in the national economy: fastener (12,000 jobs), bander (2,000 jobs), and splitter (3,000 jobs). (R. 45-46). The VE also explained that the person could not have more than eight unscheduled absences per year, or be off-task more than 10-15% of the workday. (R. 46-47). Plaintiff argues that the ALJ made several errors by relying on this testimony.

5

### a. National v. Regional Job Numbers

Plaintiff first takes issue with the VE's citation to national job numbers, arguing that agency rules and regulations require "regional job-incidence data." (Doc. 12, at 11-12; Doc. 17, at 5) (citing SSR 83-14). In *Milhem*, the Seventh Circuit recognized that the circuit's "case law addressing what constitutes a 'significant' number of jobs has sometimes conflated" regional versus national numbers. 52 F.4th at 695. Contrary to Plaintiff's suggestion, however, this does not mean regional numbers are required. As one court fairly observed, "[w]hile the *Milhem* court cautioned that moving forward, reviewing courts should be 'attentive to the difference between regional and national job numbers' in their discussions as to what constitutes a 'significant' number of jobs, it did *not* impose any requirement that there *must* be evidence pertaining to regional job numbers in the record before the ALJ." *Patrick J.W. v. Comm'r of Soc. Sec.*, No. 4:22-CV-4047-JEH, 2023 WL 3963807, at *7 (C.D. Ill. June 12, 2023) (emphasis in original). *Compare Yvonne S. v. Berryhill*, No. 3:19-CV-110, 2019 WL 4126681, at *13 (N.D. Ind. Aug. 30, 2019) (deciding before *Milhem* that regional numbers are required by the Social Security regulations). Based on this precedent, the Court declines to remand Plaintiff's case solely because the ALJ relied on national and not regional numbers.

### b. Reliability

In her reply brief, Plaintiff objects that the VE's job numbers are unreliable because he testified that he had not placed anyone in a fastener or bander position in the previous five years and declined to disclose the names of companies doing such work. (Doc. 17, at 5, 6; R. 48-49, 52) (testifying that "for the company that I go do work for, I can't disclose

6

those names."). As a preliminary matter, "arguments raised for the first time in a reply brief are deemed waived."[3] *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012).

Even if not waived, the argument is not persuasive. ALJs must "ensure that the [vocational expert's job number estimate] is the product of a reliable method." *Chavez v. O'Malley*, 96 F.4th 1016, 1022 (7th Cir. 2024). "A 'precise count is not necessary,' but the vocational expert's testimony 'must be supported with evidence sufficient to provide some modicum of confidence in its reliability.'" *Id.* (quoting *Fetting v. Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023)). Here, the VE relied on SkillTRAN, a source that is "well-accepted" in the field, and confirmed that his testimony was consistent with the Dictionary of Occupational Titles except where specified. (R. 49, 53). *See Chavez*, 96 F.4th at 1023 (describing SkillTRAN as a "source that is 'well-accepted'" in the field); *Bruno v. Saul*, 817 F. Appx. 238, 241, 243 (7th Cir. 2020) (affirming VE testimony based on the "SkillTRAN approach."). In addition, the VE supplemented the database with his own experience "when I've done job time studies, . . . or when I have done labor market surveys." (R. 49). *Chavez*, 96 F.4th at 1021-22 (VEs "may rely on a variety of sources and tools, as well as their knowledge of the job market, experience placing individuals in jobs, and surveys of employers."). Plaintiff did not object to the VE's use of SkillTRAN or take issue with his qualifications, which include a master's degree in vocational education for special populations and several decades of professional experience. (R. 43, 277-78).

As for Plaintiff's concern about the prevalence of the specific positions identified, the VE acknowledged that there used to be more fastener, bander, and splitter jobs available before they were moved overseas or automated. But he also explained that

---

3     Plaintiff recounted the VE's testimony in the fact section of the opening brief (Doc. 12, at 3), but made no related argument.

based on his experience, these jobs still exist in significant numbers. With respect to the fastener position, for example, the VE testified that it is a factory job that involves putting together small products such as screws in an electrical box, and that "there's still a lot of soft pieces that are put together" by hand. (R. 49-51). The VE noted that SkillTRAN lists many more than 12,000 available fastener jobs but he "brought it down to approximate[ly] 12,000 which are based upon my experience, the approximate number that would be at independent workstations" as necessitated by the ALJ's hypothetical. (R. 49). The VE was similarly confident that small printing companies still need people to bind pre-stacked paper items such as napkins (the bander position), and that there are "a lot of" poultry farms where meat splitting continues to be done by hand (the splitter position). (R. 51-53).

In the Court's view, the totality of the VE's testimony contains sufficient "indicia of reliability" and provides "enough detail for [the Court] to understand the sources of his data and the general process he adopted," which is "all the substantial evidence standard requires." *Chavez*, 96 F.4th at 1022, 1024; *Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023).

### c. 17,000 National Jobs is "Significant"

The last question is whether 17,000 national jobs is "significant." Plaintiff says the answer is no and faults the ALJ for failing to articulate the mathematical formula he used to determine that "17,000 jobs in a country of approximately 331,893,745 and approximately 152 million jobs was significant." (Doc. 12, at 9). To the extent Plaintiff is suggesting that an ALJ must justify job numbers with a mathematical formula, the argument fails given the lack of any supporting authority. *See William B.U. v. Comm'r of*

8

*Soc. Sec.*, No. 1:21-CV-324-MGG, 2023 WL 3477169, at *4 (N.D. Ind. May 15, 2023) ("[T]his Court is unaware of any authority requiring a precise mathematical formula.").

Looking to the number of jobs, the Seventh Circuit has not provided "a clear baseline" for what qualifies as "significant." *Milhem*, 52 F.4th at 696. The only "guideposts" are that: work existing in "very limited numbers" cannot meet the requirement; 140,000 national jobs is "well above the threshold for significance"; and 89,000 national jobs is "in accord with the numbers of national jobs held to be significant by other circuits." *Id.* at 695-97 (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 national jobs); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 national jobs); *Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (32,000 national jobs)). *See also Kuhn v. Kijakazi*, No. 22-1389, 2022 WL 17546947, at *2 (7th Cir. 2022); *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011).

In this Court's view, 17,000 national jobs qualifies as a "significant" number for purposes of the step five analysis. It is "in accord" with the range of job numbers identified in *Milhem* (10,000 to 32,000), and consistent with numbers that have been accepted by other district courts in this circuit. *See, e.g.*, *Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 national jobs significant); *Misty H. v. Kijakazi*, No. 21 C 3717, 2022 WL 4182390, at *6-7 (N.D. Ill. Sept. 13, 2022) (18,240 national jobs significant); *Smith v. Kijakazi*, No. 22 C 163, 2023 WL 4579444, at *8 (W.D. Wis. July 18, 2023) (17,000 national jobs significant). *But see John C. v. Saul*, No. 19 C 411, 2021 WL 794780, at *6 (C.D. Ill. Mar. 2, 2021) (20,000 national jobs not significant);

9

*Gass v. Kijakazi*, 1:19-CV-404-TLS, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021) (24,000 national jobs not significant).

### d. Summary

To summarize, the ALJ was not required to rely on regional job numbers and reasonably accepted reliable VE testimony in concluding that 17,000 national jobs is a significant number. Plaintiff's motion to remand the case for further consideration of the ALJ's step five determination is denied.

### 2. Plaintiff's Subjective Statements

Plaintiff next argues that the ALJ improperly discounted her subjective statements regarding her symptoms based on her alleged noncompliance with medication. (Doc. 12, at 13-14; Doc. 17, at 6-7). In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: "(1) relevant medical evidence, including intensity and limiting effects of symptoms . . .; (2) treatment and efficacy . . .; (3) return to gainful activity . . .; (4) work during disability period . . .; (5) daily activities . . .; and (6) statements inconsistent with the record." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citing 20 C.F.R. § 416.929(c)). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts*, 27 F.4th at 1278). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not

10

alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

In rejecting Plaintiff's subjective allegations, the ALJ first observed that they were inconsistent with the objective medical record. (R. 97). The ALJ noted that the only time Plaintiff exhibited severe mental limitations was in January 2019 when she was hospitalized with an acute exacerbation of her bipolar disorder (first diagnosed in 2005). (R. 97-98, 316, 420). At the time, Plaintiff had stopped taking her medications and had become increasingly irritable and paranoid with visual hallucinations. (R. 98, 316). Once on Depakote and Seroquel, however, Plaintiff's mood quickly normalized and she was discharged with prescriptions for both medications. (R. 98, 319). In February 2019 Plaintiff reported that her medications were "immensely helpful," and by March 22, 2019, her psychiatric system review was stable and within normal limits. (R. 99, 462-63, 473). The following month, on April 18, 2019, Plaintiff was discharged from further counseling because she was moving and no longer able to get to the treatment facility. (R. 99, 526).

On April 30, 2019, Plaintiff had a consultative psychological evaluation with David Cosio, Ph.D. Dr. Cosio opined that Plaintiff's level of understanding, memory, sustained concentration and persistence, and adaptation were all within normal limits. (R. 99, 583). There is no record that Plaintiff received further mental health treatment until a year later when she saw Ricardo Aguinaga, LCSW on April 6, 2020. (R. 101, 681). Plaintiff was alert, cooperative, and fully oriented with normal speech, perception, cognition, mood and affect, as well as intact judgment, thought process, and thought content. (*Id.*). A May 4, 2020 evaluation was likewise normal. (R. 101, 671).

Plaintiff does not address any of this evidence or explain how it supports her complaints of disabling mental limitations. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). Instead, Plaintiff challenges the ALJ's observation that she was non-compliant with medication, arguing that this is untrue. (Doc. 12, at 13; Doc. 17, at 7). But Plaintiff ignores the January 2019 records showing that she was hospitalized after she stopped her prescriptions and improved on Depakote and Seroquel.

Plaintiff says she continued to have symptoms after January 2019 and objects that the ALJ "cherry-picked" from her medical records without accounting for the fact that people with bipolar disorder often experience fluctuations in their functioning. (Doc. 12, at 13-14; Doc. 17, at 7-8) (citing R. 489, 506-07, 531, 574). The records Plaintiff cites do show that she complained of some symptoms in January, February and March 2019, such as pacing and rocking back and forth in a chair, difficulty controlling her temper, irritation, nightmares, flashbacks, and feelings of panic. The ALJ reviewed those notes, however, and rightly pointed out that Plaintiff's March 2019 mental exam was largely within normal limits and remained so in April and May 2020 even after more than a year without treatment. In other words, "Plaintiff's argument does precisely what it accuses the ALJ of doing: Plaintiff points to favorable facts that could support a disability finding while ignoring the unfavorable substantial evidence the ALJ relied on." *Melissa G. v. Saul*, No. 18 C 50218, 2019 WL 4392995, at *3 (N.D. Ill. Sept. 13, 2019). And since there is no evidence that Plaintiff experienced symptom exacerbations in the year she went

12

without treatment, the ALJ did not commit reversible error in failing to tie the lack of treatment to her alleged homelessness.

In addition to the treatment records, the ALJ also relied on the opinions from the state agency reviewers that Plaintiff remains capable of: understanding, remembering, carrying out, and sustaining performance of simple, repetitive work tasks; completing a normal workday; interacting superficially with coworkers, supervisors, and the public; and adapting to changes and stressors associated with simple, routine, competitive work activities. (R. 67, 83). The ALJ found these opinions generally persuasive and incorporated the stated limitations into the RFC, along with some additional restrictions. (R. 102). Plaintiff does not challenge this aspect of the ALJ's decision. She is also silent about the ALJ's observation that her testimony was inconsistent with her activities of daily living. (R. 97). *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated.").

Viewing the record as a whole, the reasons the ALJ provided for discounting Plaintiff's subjective statements were not "patently wrong" and are more than adequate to meet the substantial evidence standard. *Grotts*, 27 F.4th at 1279; *Robert S. v. Kijakazi*, No. 20 C 6286, 2022 WL 45036, at *4 (N.D. Ill. Jan. 5, 2022) ("The substantial evidence standard is a low hurdle to negotiate."). Plaintiff's request to remand the case for further consideration of her subjective statements is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the case is denied, and the Commissioner's motion for summary judgment [15] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: October 31, 2024

_____
SHEILA FINNEGAN
United States Magistrate Judge